**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| FRANK A. ROSE,<br><br>Plaintiff,<br><br>v.<br><br>KATHRYN A. HEWITT,<br><br>Defendants. | : | Civil Action No. 1:26-cv-00900 |

**<u>SECOND AMENDED COMPLAINT</u>**

COMES NOW Plaintiff Frank A. Rose ("Rose" or "Plaintiff"), by the undersigned counsel, and files this Second Amended Complaint against Defendant Kathryn A. Hewitt ("Hewitt" or "Defendant"). In support thereof, Plaintiff states as follows:

**<u>Nature of the Action</u>**

1. This is an action for defamation arising out of intentionally fabricated, false, and politically motivated statements made by Hewitt alleging that she was sexually harassed by Rose while employed at Brookings Institution ("Brookings") and that Rose delayed the extension of her intergovernmental detail while they both worked at the National Nuclear Security Administration ("NNSA") in retaliation for a purported report of sexual harassment Hewitt made at Brookings.

2. Hewitt repeatedly made provably false statements to multiple individuals in April 2024 with full knowledge that her statements were false.

3. Hewitt also made false statements to a media outlet, *Politico*, in order to ensure that her defamatory statements would reach an audience of millions of readers.

4. As a result of Hewitt's false and defamatory statements, Rose is now falsely labeled a "sexual harasser."

5. Hewitt's actions have inflicted extraordinary damage to Rose's reputation and his ability to earn a living. Rose's once-promising career has been severely damaged. All of these harms are a direct and proximate result of Hewitt's intentional publication and propagation of patently false allegations concerning Rose.

6. Rose brings this action to restore his reputation, clear his name, and vindicate his rights under civil law.

7. Rose seeks compensatory and punitive damages for the extreme harm that Hewitt has caused Rose.

**The Parties**

8. Plaintiff, Frank Rose, is a competent adult individual, residing in Alexandria, Virginia. Rose is the former Principal Deputy Administrator of the NNSA, a position he held until his recent departure.

9. Defendant, Kathryn A. Hewitt, is a competent adult individual residing in Alexandria, Virginia 22307. Hewitt previously served as the NNSA's Deputy Director for Nuclear Forensics in the Office of the Deputy Assistant Secretary of Defense for Nuclear Matters. Prior to this, Hewitt served as a Multilateral Arms Control and Nonproliferation Advisor in the Office of Secretary of Defense for Policy and as a cleared employee within the Office of the Assistant Secretary of Defense for Nuclear, Chemical, and Biological Affairs at the Department of Defense. Hewitt's employment history also includes multiple positions at NNSA, and earlier roles as a research assistant and Hebert Scoville Jr. Peace Fellow at Brookings.

## Jurisdiction and Venue

10. This Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 because the claims herein arise under federal law as a result of the previous intervention of the United States of America on Federal Tort Claims Act grounds.

11. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## Factual Background

### *Rose Oversees Hewitt at Brookings*

12. Rose is an esteemed professional with a distinguished career in the U.S. government, having served in key roles such as the Principal Deputy Administrator of NNSA, and as a senior fellow at Brookings.

13. At all times relevant, Rose has maintained a reputation for professionalism, integrity, and dedication to public service.

14. Between 2018 and 2019, Hewitt worked under Rose's supervision at Brookings. Their relationship was cordial and professional, with Rose providing career advice and assisting Hewitt with several professional opportunities.

15. During her tenure at Brookings, Hewitt demonstrated a pattern of disregarding established protocols and chains of command. Specifically, on two separate occasions, Hewitt bypassed her direct supervisors to appeal decisions she disagreed with, demonstrating a disregard for institutional hierarchy and established procedures.

16. In the first instance, Hewitt demanded that her name be placed on the cover of a report despite established Brookings policy that research assistants' contributions were acknowledged in

the acknowledgments section. When her other direct supervisor, Robert Einhorn, denied her request, Hewitt escalated the matter directly to the then Vice President for Foreign Policy, Bruce Jones. This action caused significant displeasure to Einhorn and disrupted the established workflow.

17. In the second instance, Hewitt challenged the Foreign Policy Program's policy regarding research assistants' attendance at external conferences. Despite the established policy requiring research assistants to use personal leave for such events, Hewitt appealed the decision directly to the Vice President for Foreign Policy Studies after her request was denied by the Kevin Scott, Chief Administrative Officer for the Brookings Foreign Policy Program. This action demonstrated a continued disregard for established policies and procedures.

18. As a result of these actions, Rose was compelled to conduct two separate private counseling sessions with Hewitt. During these sessions, Rose explicitly informed Hewitt that her actions were unacceptable, that she needed to respect the chain of command, and that her behavior was disruptive and inappropriate for her position. Rose also emphasized the importance of teamwork and adherence to institutional policies.

19. In response, Hewitt responded by asserting that she "didn't need the administrative staff to tell [her] what to do," making it very clear that she did not believe that the rules applied to her.

20. Despite receiving direct counseling and guidance from Rose regarding her inappropriate behavior and the importance of adhering to institutional norms, Hewitt continued to engage in actions that demonstrated a lack of respect for established procedures and a disregard for professional development advice.

21. At no point during their time at Brookings or thereafter did Rose ever harass or intimidate Hewitt, either verbally or physically.

22. Rose was never informed that any complaint, harassment, or other concerns had been raised about him during his employment at Brookings.

23. Rose was never disciplined or verbally counseled for any behavior during his time at Brookings. On the contrary, after Hewitt left Brookings in April 2019, Rose was promoted to Co-Director of the Center for Security, Strategy, and Technology. Furthermore, during his tenure at NNSA, Brookings invited Rose to give several presentations, and he had discussions with leadership in the Foreign Policy Program about returning to Brookings once he left government service. These actions strongly suggest that there were no concerns about his conduct while employed at Brookings.

*Hewitt Calls on Rose for Career Assistance*

30. Following her departure from Brookings in April 2019 to take a contractor position at NNSA, Hewitt actively cultivated a relationship with Rose, repeatedly leveraging his professional network and expertise for her own career advancement. Hewitt's goal was to secure federal employment, preferably in the Office of the Under Secretary of Defense for Policy.

31. Hewitt aggressively sought out Rose's counsel between July 2019 and May 2021, initiating meetings with Rose under the guise of seeking career advice. This calculated behavior established a facade of professional reliance and trust.

32. Crucially, Hewitt directly solicited a reference from Rose to the NNSA.

33. Rose, acting in good faith, provided a reference on Hewitt's behalf, directly enabling her subsequent federal employment at the NNSA in 2020.

34. Hewitt strategically leveraged Rose's professional support to secure a position at the NNSA, only to later turn against him when he was no longer useful to her.

35. Hewitt deleted all LinkedIn messages between herself and Rose.

36. Hewitt eventually deleted her entire LinkedIn account.

37. When a LinkedIn user deletes their account or messages with another party, the deletion applies to both the sender and recipient of such messages. Hewitt's deletion of LinkedIn messages and, eventually, her entire LinkedIn account, suggests an attempt to conceal the extent and nature of her prior one-on-one meetings and communications with Rose after she left Brookings, and the degree to which she leveraged his assistance despite her proclaimed belief that he sexually harassed her.

38. Prior to Hewitt's deletion of her LinkedIn messages and account, Rose took screenshots of the LinkedIn messages between himself and Hewitt. Rose has maintained copies of those screenshots.

39. Hewitt's deleted LinkedIn messages to Rose after her departure from Brookings make no reference to any allegations of sexual harassment by Rose but instead indicate a desire by Hewitt to maintain both her personal and professional relationship with Rose.

40. On July 30, 2019, shortly after Hewitt left Brookings, she messaged Rose on LinkedIn stating, "Frank! I will be popping by Brookings this afternoon for a panel. Hopefully, if you're around, we can catch up for a few!"

41. On November 20, 2019, Hewitt messaged Rose again on LinkedIn stating, "Good morning from DC, Frank! Hope you're loving your time in Berlin. Looking forward to hearing all about it."

42. A few days later, Hewitt once again reached out to Rose on LinkedIn to "check in and see how [Rose was] doing" and to inform Rose that she was planning on applying for a job at the Center for Naval Analysis ("CNA") because she was "not sure [NNSA]'s the right fit long term."

43. In this message, Hewitt further advised Rose that she had listed Rose and Einhorn as her supervisors at Brookings in case her application at CNA progressed.

44. Hewitt closed the message by stating, "Anywho, I hope all is well! Let me know when you're back in town!"

45. On November 24, 2020, Rose reached out to Hewitt on LinkedIn to compliment her recent participation on PBS NewsHour.

46. Hewitt responded effusively four minutes after receiving the message stating, "Hi, Frank! So great to hear from you!"

47. In her response, Hewitt also told Rose, "Would love to have virtual coffee one of these days."

48. Hewitt also contacted Rose *via* email and text message after her departure from Brookings seeking professional assistance.

49. On April 17, 2020, Hewitt sent Rose an email and a follow-up text message requesting the Rose serve as a reference for her security clearance.

50. In response, Rose informed Hewitt that he was happy to do so.

*Rose and Hewitt Cross Paths at NNSA*

51. In the spring of 2021, Rose was nominated to be Principal Deputy Administrator of NNSA.

52. The Federal Bureau of Investigation ("FBI") conducted a full background investigation of Rose as part of the nomination process.

53. The FBI agents conducting the investigation never mentioned any allegations of sexual harassment against Rose made by Hewitt or anyone else.

54. The FBI agents conducting the investigation never mentioned any investigations related to allegations of sexual harassment against Rose at Brookings.

55. Rose passed the FBI background check and proceeded with the nomination process.

56. On May 27, 2021, Hewitt reached out to Rose *via* LinkedIn to congratulate him on his performance during his Senate confirmation hearing.

57. Rose was eventually confirmed as the Principal Deputy Administrator of NNSA in July 2021.

58. Rose eventually also moved from Brookings to NNSA in August 2021 and was appointed the Principal Deputy Administrator of NNSA.

59. Hewitt was employed in the Office of Communications/Public Affairs of NNSA.

60. The Office of Communications/Public Affairs was one of eight direct reports to Rose as Principal Deputy Administrator. However, Hewitt did not personally report to Rose.

61. During the 18 months when Rose and Hewitt both worked at NNSA, Rose never communicated with Hewitt at NNSA.

62. During the time that Rose and Hewitt overlapped at NNSA, Hewitt was assigned to a detail at the Department of Defense.

63. In 2023, when the issue of the renewal of Hewitt's detail at the Department of Defense came up, there were only five people in the NNSA Office of Communications/Public Affairs, instead of the roughly ten people authorized for employment.

64. This problem was partly due to employees, including Hewitt, who were on detail in other governmental offices.

65. The Office of Communications/Public Affairs reported directly to Rose as Principal Deputy Administration, so it was Rose's responsibility to ensure that the Office was running efficiently.

66. Extensions of rotational details are solely at the discretion of management based on the needs and requirements of NNSA.

67. As a result of staffing issues, Rose initially denied the extension of Hewitt's detail at the Department of Defense.

68. This decision was based solely on NNSA's personnel needs, particularly the requirement to fully staff the Office of Communications/Public Affairs.

69. When Hewitt learned about the decision, Hewitt went behind Rose's back and asked Vipin Narang, the Department of Defense's Principal Duty Assistant Secretary for Space Policy, to contact Rose to discuss a reconsideration of the initial denial of the extension.

70. Despite the fact that it would mean operating the short-staffed Office of Communications/Public Affairs with one less employee, Rose ultimately approved the extension of Hewitt's detail as a favor to Mr. Narang.

71. After Rose approved Hewitt's extension, he gave her an additional six months to find a full-time position at the Department of Defense, which she ultimately did.

*Hewitt's Defamatory Statements to Thirty-Three Individuals*

72. Hewitt made several false statements about Rose following the delay of her rotational assignment at the Department of Defense.

73. In April 2024, Hewitt made defamatory statements to multiple individuals.

74. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose sexually harassed me at the Brookings Institution."

75. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose showed up in my cubicle at the Brookings Institution multiple times per day and stood uncomfortably close to me."

76. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose regularly read over my shoulder and purposely put his face within inches of mine at the Brookings Institution."

77. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose made inappropriate comments about my appearance at the Brookings Institution."

78. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos

Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose regularly commented on my appearance and complimented my legs if I wore skirts or dresses at the Brookings Institution."

79. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "At the Brookings Institution, Frank Rose regularly compared my looks to women he found attractive."

80. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose showed an alarming interest in my love life and asked me about my dating life almost every day at the Brookings Institution."

81. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne

Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose regularly stared at my chest and legs during meetings and would occasionally reach over to touch my knee or leg at the Brookings Institution."

82. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose regularly came up behind me and touched my shoulder or back at the Brookings Institution."

83. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose told me that he had inappropriate thoughts about me all the time at the Brookings Institution."

84. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Brandon Brown, Mara Karlin, Leah Dreyfuss, Amy Edelman, Madison Estes, Paige Gasser, Hannah Guerard, Erica Hanley, David Hewitt, Mark Hewitt, Marissa Moore, Leon Ratz, Tori Sanchez, Angela Weaver, and Carrie Williams, "Frank Rose delayed extending my

intergovernmental detail because I made a sexual harassment complaint against him when we worked together at the Brookings Institution."

85. All of the statements made by Hewitt detailed above were false.

86. Hewitt made the false statements verbally and in writing to Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Hannah Guerard, Erica Hanley, David Hewitt, Mark Hewitt, Anne Harrington, Jamie Lasser, Marissa Moore, Leon Ratz, Amelia Morgan, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams.

87. Hewitt knew that all of these statements were false when she made them because they related to her personal interactions with Rose.

88. During her time at Brookings, Hewitt worked in an open bullpen cubicle setup next to two colleagues – Adam Twardowski and Ariel Higuchi.

89. Due to their close proximity to Hewitt's workspace, Mr. Twardowski and Ms. Higuchi would have seen and/or overhead Rose's interactions with Hewitt.

90. Neither Mr. Twardowski nor Ms. Higuchi ever expressed any concerns with Rose's behavior.

91. On most occasions when Hewitt was in Rose's office, the door was open, so anyone outside of Rose's office could see and/or hear Rose's interactions with Hewitt.

92. Mike O'Hanlon, the Co-Director of the Center for Security, Strategy, and Technology whose office was next to Rose's, would have also seen and/or overheard Rose's interactions with Hewitt.

93. O'Hanlon never expressed any concerns about Rose's behavior.

94. No one at Brookings ever expressed any concerns about Rose's behavior, either towards Hewitt or any other co-worker.

95. Rose never sexually harassed Hewitt.

96. Rose never stood uncomfortably close to Hewitt.

97. Rose never read over Hewitt's shoulder and purposely put his face within inches of hers for a sexual purpose.

98. Rose never made inappropriate comments about Hewitt's appearance.

99. Rose never made any comments regarding Hewitt's physical appearance.

100. Rose never made any comments regarding Hewitt's legs when she wore a skirt or a dress.

101. Rose never compared Hewitt to women he found attractive.

102. Rose never showed an alarming interest in Hewitt's love life.

103. Rose did not ask Hewitt about her dating life almost every day.

104. Rose never stared at Hewitt's chest and legs during meetings.

105. Rose never reached over during a meeting (or any other time) to touch Hewitt's knee or leg.

106. Rose never came up behind Hewitt and touched her shoulder or back.

107. Rose never told Hewitt that he had inappropriate thoughts about her all the time.

108. Rose did not delay Hewitt's intergovernmental detail because she made a sexual harassment complaint against him when they worked together at Brookings.

109. Rose did not retaliate against Hewitt in any way.

110. Rose was never made aware of any formal complaints or investigations into Rose regarding allegations of sexual harassment or inappropriate touching during Hewitt's tenure at Brookings.

111. The FBI agents conducting the full background investigation of Rose as part of the NNSA nomination process never told Rose about any allegations of sexual harassment against Rose made by Hewitt or anyone else, nor did they ever tell Rose that there was any investigation related to allegations of sexual harassment against Rose at Brookings.

112. None of the defamatory statements Hewitt uttered were part of a report to Brookings.

113. None of Hewitt's defamatory statements were made as part of a report to any governmental entity.

114. None of the defamatory statements Hewitt uttered were part of a report to any administrative agency.

115. None of the defamatory statements Hewitt uttered were made during an investigation by Brookings.

116. None of the defamatory statements Hewitt uttered were made during an investigation by any governmental entity.

117. None of the defamatory statements Hewitt uttered were made during an investigation by any administrative entity.

118. As a result of Hewitt's false and defamatory statements to the aforementioned 33 individuals, Rose has suffered significant and irreparable damage to his reputation.

119. As a result of Hewitt's false and defamatory statements to the aforementioned 33 individuals, Rose has been falsely branded as a perpetrator of unwanted sexual touching.

120. As a result of Hewitt's false and defamatory statements to the 33 individuals, Rose has suffered significant and irreparable damage to his professional reputation to the point where he has become unemployable in his chosen profession.

*Hewitt's Defamatory Statements to Politico*

121. In April 2024, Hewitt told *Politico*, "Frank Rose sexually harassed me when we both worked at the Brookings Institution."

122. Hewitt's statement to *Politico* was false.

123. Rose never sexually harassed Hewitt when he and Hewitt both worked at Brookings.

124. In April 2024, Hewitt told *Politico,* "Frank Rose delayed extending my intergovernmental detail because I made a sexual harassment complaint against him when we worked together at the Brookings Institution."

125. Hewitt's statement to *Politico* was false.

126. Rose's initial decision to deny the extension of Hewitt's intergovernmental detail was based solely on NNSA's personnel needs, particularly the requirement to fully staff the Office of Communications/Public Affairs.

127. In April 2024, Hewitt also told *Politico*, "Frank Rose made some women in the office feel uncomfortable."

128. Hewitt's statement to *Politico* was false.

129. Rose never engaged in any behavior, either at Brookings or at NNSA, that would be likely to cause any female employee to feel uncomfortable at work.

130. Hewitt knew that her statements to *Politico* were false when she uttered them because they related to her personal interactions with Rose.

131. Hewitt uttered false statements to *Politico* with knowledge that *Politico* would republish the false claims to an audience of millions, causing damage to Rose's reputation and career that was exponentially greater than any damage that Hewitt could inflict on her own.

132. As a result of Hewitt's false and defamatory statements to *Politico*, Rose has suffered significant and irreparable damage to his reputation.

133. As a result of Hewitt's false and defamatory statements to *Politico*, Rose has been falsely branded as a perpetrator of unwanted sexual touching.

134. As a result of Hewitt's false and defamatory statements to *Politico*, Rose has suffered significant and irreparable damage to his professional reputation to the point where he has become unemployable in his chosen profession.

135. Hewitt's defamatory statements to *Politico* were intentional and uttered with malicious intent to harm Rose because of Rose's initial decision to delay Hewitt's intergovernmental detail.

136. As a result of Hewitt's defamatory statements to *Politico* regarding Rose, false allegations that Rose sexually harassed Hewitt at Brookings, retaliated against Hewitt by delaying the extension of her intergovernmental detail as a result of a sexual harassment complaint she had filed against him at Brookings, and that Rose made women in the office feel uncomfortable were widely disseminated to an audience of millions, resulting in a significant and measurable negative impact on Rose's career and personal reputation.

137. As a direct result of Hewitt's defamatory statements to *Politico*, Rose has been exposed to public hatred, contempt, ridicule, disgrace, and profound invasions of his privacy.

138. As a direct result of Hewitt's defamatory statements to *Politico*, Rose has also suffered catastrophic losses to his financial stability and the professional reputation he spent his life cultivating.

139. Hewitt's malevolent defamatory conduct against Rose in making her false statements to *Politico* was consistent with her years' long track record of striking back at superiors.

140. To wit, during a public event discussing women in national security on July 17, 2024, Hewitt stated, "This system, the national security and intelligence system, was not built by women, with women in mind. So, the rules that we have to operate by were not made for us. And so, I don't feel like we should be held to them, to be totally frank with you. Women should not be held to the rules... you don't have to play by the rules."

**Count I – Defamation**

141. Rose realleges and incorporates by reference paragraphs 1 through 140.

142. Hewitt made false and defamatory statements about Rose, knowing them to be false or with reckless disregard for their truth.

143. In April 2024, Hewitt made defamatory statements to at least 33 individuals, all of whom are identified above.

144. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose sexually harassed me at the Brookings Institution."

145. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose showed up in my cubicle at the Brookings Institution multiple times per day and stood uncomfortably close to me."

146. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose regularly read over my shoulder and purposely put his face within inches of mine at the Brookings Institution."

147. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose made inappropriate comments about my appearance at the Brookings Institution."

148. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos

Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose regularly commented on my appearance and complimented my legs if I wore skirts or dresses at the Brookings Institution."

149. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "At the Brookings Institution, Frank Rose regularly compared by looks to women he found attractive."

150. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose showed an alarming interest in my love life and asked me about my dating life almost every day at the Brookings Institution."

151. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne

Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose regularly stared at my chest and legs during meetings and would occasionally reach over to touch my knee or leg at the Brookings Institution."

152. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose regularly came up behind me and touched my shoulder or back at the Brookings Institution."

153. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Kristen Belle-Isle, Corey Broshak, Brandon Brown, Bruce Jones, Jesse Kornbluth, Filippos Letsos, Brendan Stickles, Mara Karlin, Leah Dreyfuss, Megan Anderson, Peter Chatigny, Tara Drozdenko, Amy Edelman, Madison Estes, Madeleine Foley, Paige Gasser, Erica Hanley, Anne Harrington, Jamie Lasser, Marissa Moore, Amelia Morgan, Leon Ratz, Tori Sanchez, Bernadette Stadeler, Angela Weaver, and Carrie Williams, "Frank Rose told me that he had inappropriate thoughts about me all the time at the Brookings Institution."

154. In April 2024, Hewitt told Anna Navarro, Gregory Wolf, Faiza Frownfelter, Habiba Ahmed, Brandon Brown, Mara Karlin, Leah Dreyfuss, Amy Edelman, Madison Estes, Paige Gasser, Hannah Guerard, Erica Hanley, David Hewitt, Mark Hewitt, Marissa Moore, Leon Ratz, Tori Sanchez, Angela Weaver, and Carrie Williams, "Frank Rose delayed extending my

intergovernmental detail because I made a sexual harassment complaint against him when we worked together at the Brookings Institution."

155. In April 2024, Hewitt told *Politico*, "Frank Rose sexually harassed me when we both worked at the Brookings Institution."

156. In April 2024, Hewitt told *Politico,* "Frank Rose delayed extending my intergovernmental detail because I made a sexual harassment complaint against him when we worked together at the Brookings Institution."

157. In April 2024, Hewitt also told *Politico*, "Frank Rose made some women in the office feel uncomfortable."

158. All of these statements were false.

159. Hewitt knew that her defamatory statements were false when she uttered them because they related to her personal interactions with Rose.

160. Hewitt's defamatory statements were published to third parties and caused widespread harm to Rose's reputation.

161. Hewitt's defamatory statements falsely portrayed Rose as a sexual harasser, a predator, and an individual who routinely committed unwanted sexual touching.

162. As a direct result of Hewitt's defamatory statements, Rose has suffered significant reputational harm, emotional distress, and financial losses, including but not limited to the loss of future professional opportunities and damage to Rose's standing in the national security and governmental policy sectors.

163. Hewitt's actions were malicious, willful, and wanton, and evidence a conscious disregard for the rights of Rose. Accordingly, punitive damages are appropriate.

**Count II – Defamation *Per Se***

164. Rose realleges and incorporates by reference paragraphs 1 through 163.

165. Hewitt's false statements regarding Rose, as detailed in Count I, are defamatory *per se* as to Rose.

166. Hewitt's accusations were intended to prejudice – and indeed did prejudice – Rose in his profession as a public servant and nuclear official, as he has been unable to obtain employment in his chosen profession since Hewitt uttered her defamatory statements.

167. As a result of the defamatory *per se* statements, Rose is entitled to recover damages without the need to prove actual harm.

168. Hewitt's actions were malicious, willful, and wanton, and evidence a conscious disregard for the rights of Rose. Accordingly, punitive damages are appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Rose demands judgment against Hewitt and respectfully requests this Court grant the following relief:

a) award Rose compensatory damages in an amount to be determined at trial but in no amount less than no less than $5,000,000.00, including for harm to Rose's reputation, emotional distress, and loss of career opportunities;

b) award Rose punitive damages for Hewitt's malicious and reckless conduct in making false and defamatory statements; and

c) grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Rose demands a trial by jury on all issues so triable.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Dated: July 9, 2026

Respectfully submitted,

FRANK A. ROSE

*/s/ Anders T. Sleight*
Anders T. Sleight, Esq.
(VSB No.: 84458)
Offit | Kurman, P.C.
8000 Towers Crescent Dr., Suite 1400
Tysons Corner, VA 22182
Tel: 703-745-1852 | Fax: 703-745-1835
anders.sleight@offitkurman.com

/s/ *Caroline L. Callahan*
Caroline L. Callahan, Esq.
(VSB # 88497)
Offit Kurman, P.C.
8000 Towers Crescent Drive, Suite 1400
Tysons Corner, Virginia 22182
Telephone: (703) 745-1800
Facsimile: (703) 745-1835
caroline.callahan@offitkurman.com

*/s/ Kimberly C. Lau*
Kimberly C. Lau, Esq.
(*pro hac vice admitted*)
Offit Kurman, P.A.
590 Madison Avenue, 6th Floor
New York, New York 10022
(212) 545-1900
kimberly.lau@offitkurman.com

*/s/ James E. Figliozzi*
James E. Figliozzi, Esq.
(*pro hac vice admitted*)
Offit Kurman, P.A.
590 Madison Avenue, 6th Floor
New York, New York 10022
(212) 545-1900
james.figliozzi@offitkurman.com

*Counsel for Plaintiff Frank Rose*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 9th day of July, 2026, a copy of the foregoing was sent via the Court's electronic filing system to all counsel of record.

*/s/ Anders T. Sleight*
Anders T. Sleight

4899-3107-0648, v. 5