**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| FRANK A. ROSE,<br>Plaintiff,<br>v.<br>KATHRYN A. HEWITT,<br>Defendant. | Civil Action No. 1:26-cv-00900-PTG-WBP |

**DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Plaintiff's Opposition is long on invective and short on law. It accuses Defendant of "misleading the Court" and brands her authorities "contemptible," yet at every turn it is the Opposition that misreads the controlling cases—inverting the holding of *Williams*, embracing half of *St. Amant* while disowning the other, and resting its transformative theory of actual malice on a district court footnote about punitive damages. Stripped of the rhetoric, the Opposition confirms the central defect in the Second Amended Complaint: Plaintiff does not, and cannot, plead actual malice, and that failure alone requires dismissal of both Counts under Rule 12(b)(6). The Opposition also leaves the remaining defects unanswered. It offers no response to the aggregation of hundreds of unpleaded acts of publication into a single undifferentiated mass; no answer to the *Politico* article's attribution of the offending statements to multiple unnamed witnesses and not to Ms. Hewitt; and no engagement with the immunity Virginia's anti-SLAPP statute affords a citizen who speaks out about the misconduct of a senior federal official.

## PRELIMINARIES

### A. The Opposition Was Filed Out of Time.

As a preliminary matter, Plaintiff's Opposition is untimely. Defendant served her Motion and supporting Memorandum through the Court's CM/ECF system on July 22, 2026. See ECF 39.

Plaintiff's response was due within fourteen days. Local Civ. R. 7(F)(1). Because service was electronic, Rule 6(d) adds no additional days, and the fourteen-day period expired on Wednesday, August 5, 2026, a business day. See Fed. R. Civ. P. 6(a)(1), (d). Plaintiff did not file until Thursday, August 6, 2026. *See* ECF 41. The Opposition is therefore one day late.

The Court may in its discretion decline to consider an untimely opposition and may treat the Motion as unopposed. See L. Cv. R. 7(F); Fed. R. Civ. P. 6(b)(1). Nevertheless, under Fed. R. Civ. P. 12(b)(6), a motion to dismiss may be granted only if the complaint on its face fails to state a plausible claim upon which relief can be granted and not on procedural grounds. *Guzman v. Acuarius Night Club LLC*, 167 F. 4th 217, 221-22 (4th Cir. 2026). Thus, this Motion should be granted on its merits, without regard for the untimely filing of Plaintiff's Opposition.

**B. Plaintiff Fails to Answer Most of the Motion.**

The Opposition leaves unanswered a series of independent grounds for dismissal. A party's failure to respond to an argument opposing a dispositive motion concedes it. *Stokes v. Stirling*, 64 F.4th 131, 136 (4th Cir. 2023); *Pueschel v. United States*, 69 F.3d 345, 353–54 (4th Cir. 2004). Plaintiff does not respond to, among other points: the motive-and-"pattern" allegations show only a reason to speak, not knowledge of falsity (ECF 39, Part I.B.4); actual malice is measured in April 2024, not by 2019–2021 conduct (ECF 39, Part I.B.5); the deleted messages and account postdate the statements (ECF 39, Part I.B.6); the absence of corroborating witnesses is a falsity argument (ECF 39, Part I.B.7); the Complaint never pleads that no harassment complaint existed (ECF 39, Part I.B.8); the SAC fails to attribute the quoted *Politico* statements to Ms. Hewitt (ECF 39, Part III.B); the anti-SLAPP statute applies on a Rule 12(b)(6) motion (ECF 39, Part IV & IV.A); its "should have known" clause is constitutionally inoperative against a public official (ECF 39, Part

IV.B); and Plaintiff pleads no special damages (ECF 39, Part II.C). Each may be treated as conceded. The balance of this Reply responds to the arguments Plaintiff did make.

## ARGUMENT

### I. THE SECOND AMENDED COMPLAINT PLEADS NO ACTUAL MALICE.

Plaintiff's Opposition does not dispute that Mr. Rose is a public official—a concession his counsel already made on the record, see June 18, 2026 Hr'g Tr. 24:1–3 (ECF 39-1)—or that actual malice is therefore an element of every statement in both Counts. He disputes only the legal requirement to plead actual malice, and, thereby, the insufficiency of his pleading. Setting aside controlling precedent, Plaintiff posits his own rule, asserting that a plaintiff need only "assert[] that the defendant made false statements and that the defendant knew the statements were false when the statements were made." ECF 41 at 7. His pleading of actual malice rests entirely on the inference that, because Ms. Hewitt was present for the interactions she described, she must have known her statements were false. ECF 41 at 6, 8. But the Supreme Court long ago rejected that inference: an eyewitness's characterization of ambiguous events does not prove knowledge of falsity, for presence establishes the opportunity for knowledge, not knowledge itself. The Complaint pleads no fact bridging that gap, and the Opposition never answers the controlling authority. Actual malice is not pleaded in the Second Amended Complaint, and on that ground alone all claims must be dismissed.

#### A. Actual malice must be pled with facts that go beyond conclusory recitals.

Mr. Rose must plead actual malice as an element of the claim itself. And, at the complaint stage, he must do so with sufficient facts to "cross the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Each separate defamatory statement itself constitutes a separate and distinct cause of action that must be pleaded separately and evaluated for actual malice. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 n.3 (quoting Restatement

(Second) of Torts § 577A cmt. a (1977)); *see Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503 (1984) (endorsing statement-specific analysis of actual malice). Because actual malice must be proved at trial by clear and convincing evidence, that heightened standard calibrates the assessment of plausibility at the pleading stage. *Iqbal*, 556 U.S. 662, 678–79 (2009). The Second Amended Complaint (SAC), which alleges 347 defamatory acts in the aggregate, fails on every claim to provide the facts required to bring its naked assertions of actual malice across the line to plausibility, as the balance of this Part explains.

**B. Actual malice is a subjective standard, measured by the speaker's actual awareness of falsity.**

The Opposition distills its entire theory to a single sentence: pleading actual malice, it says, is "exceedingly straightforward: if a plaintiff asserts that the defendant made false statements and that the defendant knew the statements were false … then actual malice is well-pleaded." ECF 41 at 7. Plaintiff's rule, however, is substantially incorrect under controlling Fourth Circuit and Supreme Court authority, and under Virginia state court precedent. His theory rests on a footnote in one decision, *Thurston v. BankUnited, N.A.*, 815 F. Supp. 3d 445 (W.D. Va. 2025), quoted for the proposition that a plaintiff adequately alleges actual malice by asserting the defendant "knew the statements … were false." ECF 41 at 7. *Thurston* does not supply the support asserted. The *Thurston* court's actual malice analysis arose in the context of punitive damages, not the threshold viability of the private plaintiff's defamation claim itself. *Thurston*, 815 F. Supp. 3d at 450 n3 (W.D. Va. 2025). The court did not hold that actual malice was well-pleaded solely because the plaintiff alleged knowledge of falsity. The court's conclusion was grounded in the specific factual context of that case – a dispute relying on a handful of banking documents the court had examined – and not in a general rule that alleging knowledge of falsity is always sufficient. The Opposition's extrapolated rule cannot rest on the support it adduces.

It also ignores decades of controlling precedent. Contrary to the rule Plaintiff asserts, the subjective-knowledge element governs all proof of actual malice, not merely the reckless-disregard prong—as the Memorandum sets out. ECF 39 at 3, 5–7. Actual malice requires that the speaker acted "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not," *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964), meaning she "in fact entertained serious doubts as to the truth" of what she said, *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). And "there is a significant difference between proof of actual malice ... and mere proof of falsity," *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984), so proof that a statement is false is not proof that its speaker knew it was false, which is the inference Plaintiff wrongly presses when he insists Ms. Hewitt's knowledge follows automatically from the statements' purported falsity.

The Fourth Circuit's rule is categorical: "Actual malice is a subjective standard." *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991) (en banc); *accord Fairfax v. CBS Corp.*, 2 F.4th 286, 293 (4th Cir. 2021); *Horne v. WTVR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018) (defendant must have had "a particular, subjective state of mind at the time the statements were made"). The standard is not whether a reasonably prudent person would have spoken or investigated; Plaintiff must plead facts permitting the conclusion that Ms. Hewitt "in fact entertained serious doubts as to the truth" of her statement, *St. Amant*, 390 U.S. at 731, or spoke with a "high degree of awareness of … probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Virginia applies the identical standard. *Jordan v. Kollman*, 269 Va. 569, 580-81 (2005); *Jackson v. Hartig*, 274 Va. 219, 229-30 (2007).

Plaintiff's contrary arguments are wordplay dressed as indictment. That the term "subjective" "appears nowhere" in *Sullivan* or *St. Amant* (ECF 41 at 6–7) confuses vocabulary

with substance; "serious doubts as to the truth of [her] publication" describes a state of mind, and renaming it changes nothing. Nor is there anything to the charge that Defendant cited *St. Amant* "seven times" "in an apparent attempt to mislead the Court." ECF 41 at 7. The irony is conspicuous: it is the Opposition that misreads *St. Amant*, embracing its observation that good-faith professions fail "where a story is fabricated," 390 U.S. at 732, while discarding, as supposedly confined to a post-judgment record, the same opinion's controlling requirement of "serious doubts," *id.* at 731. A litigant may not adopt one half of a holding and wish the other away, and one who does is in no position to accuse his opponent of misleading anyone. The standard for actual malice is unitary, rooted in the First Amendment, and it applies at the pleading stage—which is why Defendant paired *St. Amant* with *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012), *Fairfax v. CBS Corp.*, 2 F.4th 286, 293–94 (4th Cir. 2021), and *Bennett v. Lundh*, 85 Va. App. 136, 149 (2025), none of which the Opposition answers.

Even taken on its own terms, Plaintiff's rule fails: a plaintiff cannot simply allege that the defendant "knew" a statement was false and expect that allegation to survive a motion to dismiss. The Fourth Circuit rejected precisely that pleading in *Mayfield*, holding the assertion that the defendants' statements "were known by [them] to be false ... or were made with reckless disregard" both "entirely insufficient" and "precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 377–78. Conclusory assertions of knowledge, unsupported by facts, plead nothing. *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 273-74 (4th Cir. 2022).

The SAC does not clear even Fed. R. Civ. P. 8's threshold. The only allegations touching Ms. Hewitt's knowledge are the recitals that she "knew" her statements were false, SAC ¶¶ 87, 130, 159, supported by nothing more than the assertion that the statements "related to her personal

interactions" with Mr. Rose—a legal conclusion the Court does not presume true. *Iqbal*, 556 U.S. at 678–79. The Opposition's rejoinder that these are not conclusory because the SAC details that Mr. Rose "never engaged in" the conduct, SAC ¶¶ 95–109; ECF 41 at 6 n.1, misses the distinction: those allegations go to *falsity*, not to knowledge of falsity. *Bose*, 466 U.S. at 511. Stripped of the recitals, the SAC pleads no fact making knowing falsity more plausible than the innocent explanation that Ms. Hewitt recounted her own interactions as she experienced them. *Twombly*, 550 U.S. at 567–70; *Iqbal*, 556 U.S. at 682.

**C. Fabrication of a personally experienced event does not establish knowledge of falsity where the statement characterizes ambiguous conduct.**

Relying on *St. Amant*'s concession that "Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant," *St. Amant*, 390 U.S. at 732, the Opposition claims Defendant fabricated the objectionable statements and posits that fabrication supplies the missing state of mind. ECF 41 at 7. Even accepting that theory, however, it does not reach the facts of this case. Fabrication may supply knowledge where the statement asserts a determinate, verifiable fact about which the speaker's presence yields certain knowledge, but it does not apply where the statement is an evaluative characterization of ambiguous conduct, because there, presence yields an interpretation, not a fact the speaker knows to be false.

As the Memorandum explained, ECF 39 at 6–7, presence at an event establishes the opportunity for knowledge, not knowledge itself, and *Bose* forecloses the eyewitness-knowledge syllogism where the event "bristled with ambiguities," *Bose*, 466 U.S. at 512–13 (quoting *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971)). That is this case. A speaker may adopt "one of a number of possible rational interpretations" of ambiguous material without actual malice, even as to the gravest accusation. *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 300 (4th Cir. 2008) (accusation that a contractor bore responsibility for

child rape was a rational interpretation of ambiguous reports, not reckless disregard); *see Horne v. WTVR, LLC*, 893 F.3d 201, 211-12 (4th Cir. 2018). And "sexual harassment" is a characterization of ambiguous interpersonal conduct whose defining element, whether the conduct was unwelcome, resides in the complainant's own perception. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 68 (1986); *cf. Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). Ms. Hewitt's characterization of her own experience is thus the paradigm of a rational interpretation that presence cannot render knowingly false; Mr. Rose's denials show only that he perceived the conduct differently, and a competing characterization is not evidence that Ms. Hewitt disbelieved her own. *Bose*, 466 U.S. at 511.

*Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471 (E.D. Va. 2018), on which Plaintiff relies, proves the point by contrast. Actual malice was adequately pleaded there because the underlying conduct was unambiguous and known by all to be innocent—the plaintiff's routine document-shredding, done openly for years with no policy against it—so the defendants' sinister characterization could only reflect a meaning they knew to be false, leaving no interpretive gap. *Spirito*, 350 F. Supp. 3d at 481. Harassment, by contrast, is inherently evaluative, with no comparable innocent baseline. And, where *Spirito* pleaded granular facts about what the defendants observed and for how long, the SAC pleads only the bare recital that Ms. Hewitt "knew ... because [the statements] related to her personal interactions with Rose," SAC ¶¶ 87, 130, 159.

While a completely "fabricated" story, *St. Amant*, 390 U.S. at 732, or one "based entirely on an unverified anonymous telephone call," *Hatfill v. New York Times Co.*, 532 F.3d 312, 324–25 (4th Cir. 2008), may allow an inference of the subjective state of mind actual malice requires, no court has held that a contested characterization of real, acknowledged interactions, as here, may do the same. The SAC must allege "more than a sheer possibility that a defendant has acted

unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and must rule out "obvious alternative explanation[s]" for the conduct, *Twombly*, 550 U.S. at 567. Plaintiff's fabrication theory, as pled, supplies neither the facts necessary to attribute actual malice to Ms. Hewitt nor any basis to exclude the obvious innocent explanation.

## II. The Individual Statements Independently Fail Under Virginia Law.

### A. The SAC's aggregate pleading fails to allege publication.

Publication is the first element of defamation, and each communication of the same defamatory matter—to a new person or the same person—is a separate and distinct publication that gives rise to its own cause of action and must be separately pleaded. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 n.3 (quoting Restatement (Second) of Torts § 577A cmt. a (1977)). The Opposition never engages that rule. It answers a different question, invoking *Food Lion* and *Davison,* for the proposition that a plaintiff need not name every recipient to plead the publication *element*—communication to a third party who understood the reference. ECF 41 at 9; *Food Lion, Inc. v. Melton*, 250 Va. 144, 151 (1995); *Davison v. Rose*, 2019 WL 13193754, at *21 (E.D. Va. July 31, 2019). Defendant never disputed that. The defect that remains is that the SAC pleads ten statements to a thirty-three-person roster and one statement to a seventeen-person subset—some 347 discrete speech acts—while itemizing not one.

The Fourth Circuit has held that a plaintiff "may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period"; each act of defamation is a separate tort that the plaintiff "must specifically allege." *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. Feb. 23, 1999). Federal pleading standards accordingly "require that a plaintiff specifically allege each act of defamation," including "the time, place, content, speaker, and listener of the alleged defamatory matter." *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 492 n.9 (W.D. Va. 2019).

Pleading in the aggregate prevents Defendant from framing a responsive pleading and makes it impossible to test actual malice statement by statement—the inquiry the First Amendment requires, because actual malice must be assessed as to each separate publication. *Bose Corp.*, 466 U.S. at 508; *McCullough v. Gannett Co.*, No. 1:22-cv-1099 (RDA/LRV), 2023 WL 3075940, at *13 (E.D. Va. Apr. 25, 2023) (analyzing actual malice seriatim as to each statement). A complaint that lumps 347 acts of defamation together, without specification, fails to plausibly allege the publication element of any individual claim.

Plaintiff's lead authority proves the point. *Doe v. Roe*, 295 F. Supp. 3d 664 (E.D. Va. 2018), denied dismissal because the complaint pleaded discrete occasions and dates—statements made "on multiple occasions," the latest "in June and July 2016"—supplying the specificity the SAC omits. *Id.* at 670–71, 678. *Food Lion* likewise excused naming recipients only because the setting—a face-to-face confrontation with bystanders present—made the occasion evident. 250 Va. at 148–49. The SAC supplies neither.

Finally, the Opposition dismisses the occasion argument as "irrelevant" because Defendant did not move under Rule 12(b)(1) or 12(b)(2). ECF 41 at 12. That misreads the Memorandum. Occasion was raised as a matter of pleading sufficiency: the occasion-based privileges, limitations, and place-of-publication consequences that attach to each separate publication cannot be framed against a roster that conceals them. Those are merits and affirmative-defense questions, not jurisdictional ones. *Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879, 886–87 (W.D. Va. 2020); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 565–67 (D. Md. 2019). Relabeling the point does not answer it. At a minimum, Plaintiff should be required to replead each publication seriatim, providing for each "the time, place, content, speaker, and listener," or provide a more definite statement. *See infra* Part II.D.

**B. The evaluative labels and the retaliatory-motive attribution are non-actionable opinion.**

Whether a statement is fact or opinion is a threshold question of law for the Court to resolve now, not an issue for a jury. *Williams v. Garraghty*, 249 Va. 224, 233 (1995); *Morrissey v. WTVR, LLC*, 432 F. Supp. 3d 617, 622 (E.D. Va. 2020). The Opposition answers with *Schaecher*'s instruction to read the statements in context and together. ECF 41 at 14. But that rule governs a statement's defamatory meaning and innuendo, not the fact/opinion line, and reading the eleven statements together cannot convert an evaluative, viewpoint-dependent label into a provably false fact. *Schaecher* itself draws the Motion's line: an opinion is actionable only where it "impl[ies] an assertion of objective fact." *Schaecher v. Bouffault*, 290 Va. 83, 103 (2015) (quoting *Raytheon Tech. Servs. Co. v. Hyland*, 273 Va. 292, 303 (2007)).

The Opposition's insistence on the "obvious" sting of a harassment accusation, ECF 41 at 13–14, answers an argument the Motion never made. Defendant does not dispute that falsely accusing a person of sexual misconduct can carry sting; she concedes the specific conduct statements are factual and meets them on sting. ECF 39 at 15. The sting objection is directed only at the statements that carry none—the "complimented my legs" statement, SAC ¶ 78, and the *Politico* "made some women… feel uncomfortable" line addressed in Part III—not at the accusation writ large.

The Opposition reserves its most heated rhetoric for Defendant's citation of *Williams v. Garraghty*, 249 Va. 224 (1995), which it brands the "most contemptible citation of all" and charges was offered "for precisely the opposite" of its holding. ECF 41 at 15–16. The accusation is not merely misdirected; it is precisely backwards. The Memorandum cited *Williams*, 249 Va. at 233, for the fact/opinion line the case draws: a subjective characterization is protected opinion, while a statement of the specific underlying conduct it describes is a factual assertion that may be

actionable. ECF 39 at 16. That is exactly what *Williams* holds—pure expressions of opinion cannot ground a defamation action, though factual statements offered to support an opinion can, *id.* at 233—and it is the very passage the Opposition itself block-quotes while insisting it means the reverse. If any citation in this litigation has been wrenched from its holding, it is the Opposition's reading of *Williams*.

*Williams* confirms Defendant's framework in two ways. First, it holds that whether a statement is fact or opinion is "for a court, not a jury, to determine, as a matter of law." *Id.* This is the pleading-stage resolution the Opposition resists. Second, its facts track this case: *Williams* held a subordinate's memorandum accusing a superior of sexual harassment actionable because it set forth specific factual conduct, not because it used the label "harassment." *Williams v. Garraghty*, 249 Va. at 233. The decision separates the factual core of a harassment accusation, which is actionable, from evaluative characterization, which is opinion. This is the same line Defendant draws between the conduct statements she concedes are factual and the "sexual harassment" and "inappropriate" labels and retaliatory-motive attribution she identifies as opinion. ECF 39 at 16. Nothing in *Williams* is contrary to the Memorandum; the Opposition has mistaken Defendant's concession that the conduct statements are factual for a claim, never made, that every statement is opinion.

The Opposition's treatment of *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), proves Defendant's point rather than rebutting it. It concedes that *Chapin* protects an evaluative term as "a conclusory punch line following fully-disclosed facts" and that the case was one of libel by implication. ECF 41 at 14–15. That is exactly why the "sexual harassment" label is protected here: the SAC discloses the specific conduct said to constitute it, SAC ¶¶ 75–83, to the

very audience that heard the label, so no undisclosed facts remain to imply. *Chapin*, 993 F.2d at 1093.

That leaves the Opposition's catalog of Defendant's opinion authorities, which it lists and then waves off with the assertion that harassment accusations are "in a league of their own." ECF 41 at 18. That is not a fact/opinion argument. Under the four-factor analysis both sides' cases apply, an evaluative, viewpoint-dependent label lacks a provably false connotation regardless of how serious its subject—so "inappropriate," SAC ¶ 77, and the causal "because she complained" inference, *id.* at ¶ 84, are opinion no less than the characterizations in *Raytheon*, 273 Va. at 305, and *Moschetti v. Off. of Inspector Gen.*, 758 F. Supp. 3d 533, 549 (E.D. Va. 2024). The two decisions the Opposition invokes to the contrary are Defendant's own: *Yeagle v. Collegiate Times*, 255 Va. 293 (1998), held a caustic label non-actionable as "rhetorical hyperbole," *id.* at 295–96, and *Chaves v. Johnson*, 230 Va. 112 (1985), held that calling a professional "inexperienced" and his fees "excessive" was protected opinion, *id.* at 118-19. The labels and the motive attribution are thus opinion and should be dismissed.

### C. The per se count adds nothing and fails with the statements themselves.

Count II rises and falls with Count I: every statement that is non-actionable opinion (Part II.B) or unsupported by a plausible allegation of actual malice (Part I) fails as defamation per se for the same reasons. The label cannot resurrect a statement that is not actionable to begin with.

The Memorandum sets out the four categories actionable per se and shows that a plaintiff must affirmatively establish that a statement fits one—a question the Court may resolve now. ECF 39 at 4, 19; *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713–14 (2006).

The SAC pleads Count II under a single category: it alleges only that Ms. Hewitt's statements "were intended to prejudice — and indeed did prejudice — Rose in his profession as a

public servant and nuclear official." SAC ¶ 166. That is the fourth *Tronfeld* category—words that prejudice a person in his profession or trade. *Tronfeld*, 272 Va. at 713. The Opposition, however, now advances two additional categories the SAC never pleaded—the first (imputing a crime of moral turpitude) and the third (imputing unfitness for office). ECF 41 at 20–22. A plaintiff may not amend his complaint through an opposition brief, and the Court should hold Mr. Rose to the theory he actually pleaded. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands*, 713 F.3d 175, 184–85 (4th Cir. 2013).

**D. If the individual-statement claims survive, the more definite statement required under Rule 12(e) is necessary to ensure Defendant can adequately respond.**

Should the Court decline to dismiss on the pleading of publication (Part II.A), requiring the Plaintiff to provide a more definite statement under Rule 12(e) is necessary to ensure Defendant can adequately respond. Virginia recognizes occasion-based privileges that turn on the circumstances of each communication—the speaker, the listener, and the occasion. *Cashion v. Smith*, 286 Va. 327, 337–38 (2013). Defendant cannot frame those privileges, or the limitations and place-of-publication defenses that attach to each separate publication, against the SAC's undifferentiated mass, which identifies neither which communication reached which recipient nor when, where, or by what means. That the statements were not part of a formal report or investigation, SAC ¶¶ 112–17, does not foreclose privilege: qualified privilege attaches to any communication made on a proper occasion to persons with a corresponding interest—precisely what the roster conceals. And *Doe v. Roe*, which observed that a defendant "certainly remembers whether she accused" the plaintiff, addressed notice of a single accusation, not the ability to assert occasion-based defenses to hundreds of separate publications. 295 F.Supp.3d at 678. A pleading as determinedly vague as the SAC—one that prevents a party from reasonably preparing a response—is the classic occasion for a more definite statement. Fed. R. Civ. P. 12(e). The Court

should order the Plaintiff to plead each claim of defamation separately, providing details necessary for a response, including for each, time, place, and means of communication.

## III. THE POLITICO STATEMENTS FAIL TO STATE A CLAIM.

The SAC's three *Politico* allegations (¶¶ 121, 124, 127) rest entirely on a single *Politico* article. That article—which the SAC quotes and is already in the record as ECF 1-3 at 133–135—refutes the allegations' central premise: it nowhere attributes the quoted statements to Ms. Hewitt. The *Politico* claims fail for that reason, and, in any event, for the same reasons as their individual-statement counterparts.

### A. The article is properly before the Court.

A document integral to and relied upon in the complaint is properly before the Court on a Rule 12(b)(6) motion, and where it contradicts the pleading, the document controls. ECF 39 at 22; *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). The SAC's *Politico* allegations: paragraphs 121, 124, and 127 purport to quote statements Ms. Hewitt made "to *Politico*," and the article is their only pleaded source. The Opposition's contention that the article should not be "considered at the pleading stage" (ECF 41 at 18–19) inverts the rule: it is Plaintiff who put the article at issue by attaching it to the initial Complaint, and its authenticity is undisputed.

### B. The article does not attribute the quoted statements to Ms. Hewitt.

Read against the pleading, the article dismantles the SAC's premise: it never names Ms. Hewitt, and it attributes every relevant statement to multiple anonymous sources. Paragraph 121 quotes her as telling *Politico*, "Frank Rose sexually harassed me when we both worked at the Brookings Institution." No such statement—by Ms. Hewitt or anyone—appears in the article. Paragraph 124 quotes her as saying "Frank Rose delayed extending my intergovernmental detail

because I made a sexual harassment complaint"; the article contains no such first-person quote, only the reporter's third-person paraphrase attributed to "interviews with that person and three current and former colleagues of hers," not to Ms. Hewitt. Paragraph 127 quotes her as saying "Frank Rose made some women in the office feel uncomfortable," but the article attributes that to "three current and former NNSA officials" collectively.

The three assertions tied to *Politico* are thus the "naked assertion[] devoid of further factual enhancement" that *Iqbal* rejects, 556 U.S. at 678. Under *Goines*, the document controls, and the *Politico* allegations fail for want of any plausible attribution to Ms. Hewitt. The Opposition's authorities, ECF 41 at 19, do not fill the gap: *Santos v. Christian*, No. 3:15cv476, 2015 WL 7738353 (E.D. Va. Nov. 30, 2015), and *Brown v. Triton Sec., Inc.*, No. 1:04-CV-01544-JCC, 2005 WL 4663731 (Mar. 23, 2005), address whether a statement was published to a third party, not whether Ms. Hewitt was the speaker; and *Schaecher v. Bouffault* goes to whether "some women" might refer to Ms. Hewitt—a question of defamatory meaning, not of who spoke to *Politico*.

### C. The Politico statements fail for the same reasons in any event.

Even if the statements could be attributed to Ms. Hewitt, they fail with their counterparts. The harassment and retaliation statements (SAC ¶¶ 121, 124) fail for want of any plausible allegation of actual malice, *see supra* Parts I, I.E. The statement that Mr. Rose "made some women ... feel uncomfortable" (SAC ¶ 127) reports others' subjective reactions—a non-actionable characterization of the kind addressed *supra* in Part II.B.

## IV. VIRGINIA'S ANTI-SLAPP STATUTE INDEPENDENTLY BARS THE CLAIMS.

Independent of the pleading defects above, Virginia Code § 8.01-223.2 immunizes Ms. Hewitt's statements and bars both Counts. The statute confers immunity from tort liability for statements "regarding matters of public concern that would be protected under the First Amendment," Va. Code § 8.01-223.2(A), and withholds that immunity only for statements the

declarant "knew or should have known [were] false, or were made with reckless disregard," *id.* § 8.01-223.2(B). Plaintiff does not dispute that the statute applies here on a Rule 12(b)(6) motion; he argues only that Ms. Hewitt's statements fall outside subsection (A) and within the subsection (B) exception. Both arguments fail, and on this record the statute requires dismissal even if the Complaint otherwise stated a claim.

**A. The statements concern a matter of public concern.**

These statements address a matter of public concern. ECF 39 at 27. The SAC alleges that Mr. Rose is the Senate-confirmed Principal Deputy Administrator of the National Nuclear Security Administration, ¶¶ 8, 57–58, and that the statements accuse him of abusing that authority—harassing a subordinate and wielding his official power over her federal detail to retaliate. An accusation that a Senate-confirmed federal official abused his office is quintessentially a matter of public concern. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971); *Campbell v. Galloway*, 483 F.3d 258, 269 (4th Cir. 2007).

Ms. Hewitt's sworn declaration, already in the record as ECF 1-3 at 39–41, confirms the point: she attests that her account concerns "the abuse of power by a senior federal employee against women who were his subordinates," Decl. ¶ 22, and that she raised those concerns through internal channels before any of the statements at issue, *id.* at ¶¶ 12–13, 15.

Plaintiff's contrary authorities, ECF 41 at 25–26, involve nothing of the kind. *Rolofson v. Fraser*, 81 Va. App. 508 (2024), and *Stroman v. Colleton County School District*, 981 F.2d 152 (4th Cir. 1992), concerned private employment grievances—an employee's complaints about the conditions of her own employment. Neither involved an accusation that a Senate-confirmed national-security official abused his office. If anything, *Rolofson*'s line between private grievance

and public concern places these statements squarely on the public-concern side. *Rolofson*, 81 Va. App. at 530–31.

**B. The § 8.01-223.2(B) exception cannot be satisfied by a public official.**

As the Memorandum showed, the "should have known" (negligence) prong of § 8.01-223.2(B) cannot apply to a public-official plaintiff: the First Amendment forbids liability on a public official's behalf absent actual malice. ECF 39 at 26; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). Read to avoid that infirmity, the exception withholds immunity only where the declarant acted with actual malice. The Opposition never engages this; it leans entirely on the "should have known" clause, ECF 41 at 24–25, a standard the Constitution makes unavailable to Mr. Rose.

**C. Because the Complaint pleads no actual malice, immunity attaches to every statement.**

The exception thus collapses into the actual-malice inquiry, and, as Part I shows, the Complaint pleads none. Plaintiff's answer—that false statements have "no constitutional value" under *Gertz*, 418 U.S. at 340, and so are unprotected, ECF 41 at 26—is circular. Whether a statement about a public official is protected turns on actual malice: a false statement is protected unless made with knowing falsity or reckless disregard. That is the holding of *Sullivan*. 376 U.S. at 279–80. Because the Complaint pleads no actual malice, the statements "would be protected under the First Amendment," § 8.01-223.2(A); the subsection (B) exception is not triggered; and immunity bars every statement in both Counts.

*Grover Gaming, Inc. v. Huffman*, No. 7:23-cv-321, 2023 WL 8936349 (W.D. Va. Dec. 27, 2023), ECF 41 at 24, does not help Plaintiff. There the court declined immunity where the defendant had manufactured a public controversy "out of whole cloth" through the very falsehoods at issue. *Grover Gaming Inc.*, 2023 WL 8936349, at *6. Here the public concern is genuine and

independent of any falsity—the conduct of a Senate-confirmed federal official toward his subordinates—so that rationale has no application.

**D. Defendant should be awarded fees.**

Ms. Hewitt, entitled to immunity under Virginia Code § 8.01-223.2, should be awarded her reasonable attorney fees and costs under § 8.01-223.2(C). Courts in this Circuit, looking to Title VII fee jurisprudence for a model, weigh several factors, the first and most heavily weighted being whether the claim was frivolous, unreasonable, or without foundation. *Fairfax v. CBS Broad. Inc*., 534 F. Supp. 3d 581, 600-01 (E.D. Va. 2020). This case meets that standard. Mr. Rose is a public official who pleaded no non-conclusory allegation of actual malice and rested his sole affirmative authority on a private-figure footnote addressing punitive damages, *see supra* Part I, directed at statements that are protected opinion or carry no defamatory sting, *see supra* Part II.B, and that he never tied to any pleaded occasion of publication, *see supra* Part II.A. A claim missing every essential element, pressed on mischaracterized authority, has no substantial basis in fact or law. That distinguishes this case from *Fairfax,* 2 F.4th 286, 293, and *Malone v. WP Co., LLC,* No. 3:22-cv-00046, 2023 WL 6447311, at *9 (W.D. Va. Sept. 29, 2023), where fees were denied because the plaintiffs advanced colorable, factually disputed theories against resource-rich media defendants, and aligns it with *Minnix*, where fees were awarded because the claim lacked "some basis in fact and in law." *Minnix v. Sinclair Television Grp., Inc*., No. 7:23-cv-091, 2023 WL 3570955, at *5 (W.D. Va. May 19, 2023) (quoting *McCullough v Gannett, Co.,* No. 1:22-cv-1099 (RDA/LRV), 2023 WL 3075940, at *16 (E.D. Va. Apr. 25, 2023)); *cf. Malone*, 2023 WL 6447311, at *4. The remaining factors do not save the claim: Ms. Hewitt is an individual defending her own report of harassment, not a media conglomerate able to absorb the cost, so the resource-imbalance and chilling concerns that defeated fees in *Fairfax* and *Malone* cut the other way here. That result

is reinforced by the posture of this case—a third pleading, filed after two dismissals, its opposition filed out of time—precisely the persistent, meritless burden on protected speech that § 8.01-223.2(C) is meant to deter. The Opposition offers no substantive response to any of this. Its sole answer to the fee request is the conclusory assertion that, because Ms. Hewitt is not entitled to immunity, "her request for a fee award should be ignored," ECF 41 at 26—a contention that rises and falls with the immunity question resolved above and never engages the governing factors, leaving Defendant's request effectively unopposed on its merits.

### V. The Dismissal Should Be With Prejudice.

The dismissal should be with prejudice. The Second Amended Complaint is Plaintiff's third attempt to plead these claims, filed after the Court dismissed a prior complaint, and it repeats the same defects rather than curing them. The Opposition neither argues against prejudice nor requests leave to amend, and identifies no fact Plaintiff could plead to supply what is missing: a non-conclusory allegation of subjective knowledge of falsity (Part I), an actionable statement of fact rather than protected opinion, *see supra* Part II.B, or a pleaded occasion for any single publication, *see supra* Part II.A. These are substantive defects, not matters of detail a further pleading could repair, and amendment would therefore be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## CONCLUSION

For these reasons, and those in the opening Memorandum, Ms. Hewitt should be found immune under Virginia Code § 8.01-223.2 and awarded her reasonable attorney fees and costs under § 8.01-223.2(C) and the Second Amended Complaint dismissed with prejudice; in the alternative, Plaintiff should be ordered to provide a more definite statement.

Respectfully submitted,

KATHRYN A. HEWITT
By counsel:

/s/ Mary E. Kuntz
Mary E. Kuntz (VSB No. 76947)
Anna Kathryn Barry (D.C. Bar No. 1719493), pro hac vice
Kalijarvi, Chuzi, Newman & Fitch, P.C.
Counsel for Defendant Kathryn A. Hewitt

Dated: August 12, 2026

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2026, a true and correct copy of the foregoing Defendant Kathryn A. Hewitt's REPLY In Support of Her Motion to Dismiss the Second Amended Complaint, was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to counsel of record for all parties, including counsel for Plaintiff:

Anders T. Sleight (VSB No. 84458)
Offit Kurman P.A.
8000 Towers Crescent Drive, Suite 1400
Vienna, VA 22182
Anders.sleight@offitkurman.com

Kimberly C. Lau, *pro hac vice*

James Figliozzi, *pro hac vice*

/s/ Mary E. Kuntz

______________________________

Counsel for Defendant Kathryn A. Hewitt